UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

GRAYDON RANDALL ANDERSON and JESSICA SUZANNE ANDERSON,

Debtors.

Case No. 26-11466-7

---

# DECISION

The matter before the Court is a Motion for Relief from Automatic Stay to permit Adam, Nicole, Peter, and Cynthia Peterson (collectively "Movants") to return to state court to obtain a ruling on a motion for summary judgment ("State Court Motion") on the issues related to claims they have filed against the Debtors, Graydon and Jessica Anderson ("Mr. Anderson," "Mrs. Anderson," or "Debtors"). The Debtors oppose the motion on the basis that judicial economy would be better served if the motion were denied.

## FACTS

The Debtors are married. One of Mr. Anderson's companies is Graydon Home Construction, LLC ("GHC").[1]

The Movants are two generations of a family.[2] Cynthia and Peter Peterson ("Peterson Parents") are the parents of Nicole Peterson.[3] Nicole Peterson is married to Adam ("Peterson Family").[4]

---

[1] Dkt. No. 26.

[2] Dkt. No. 33-4 at 5, 7.

[3] *Id.* at 7 ¶ 2.

[4] *Id.* at 5 ¶ 1.

The Peterson Parents owned property located at N4335 1050 Street, Prescott, Wisconsin 54021 (the "Property") before August 20, 2024.[5] The Peterson Parents intended to sell the Property to the Peterson Family, and the Peterson Family planned to remodel the farmhouse on the Property (the "Project").[6]

There was an oral agreement among the Movants that the Peterson Parents would pay for the Project, subject to a purchase agreement for the Property, a Warranty Deed, and repayment terms.[7] The Peterson Family contracted with GHC for the Project.[8] GHC was the general contractor.[9]

The Peterson Parents were not parties to this contract.[10] Based on the oral agreement with the Peterson Family, the Peterson Parents issued payment directly to GHC for work on the Project.[11] The Project was not completed.

The Movants sued Mr. Anderson and GHC in the Circuit Court for Pierce County, Wisconsin ("State Court"), on November 18, 2024.[12] The complaint was amended to add causes of action against Mrs. Anderson and other companies owned by one or the other of the Debtors.[13]

---

[5] *Id.* at 7 ¶ 1.
[6] *Id.* at 7 ¶ 3-4.
[7] Dkt. No. 33-4 at 9 ¶ 22.
[8] *Id.* at 7 ¶ 7.
[9] *Id.* at 9 ¶ 18.
[10] *Id.* at 7 ¶ 7.
[11] *Id.* at 9 ¶ 23.
[12] Dkt. No. 33-3.
[13] Dkt. No. 33-4.

After conducting discovery, the Movants filed the State Court Motion.[14] It asserts there is no genuine issue of material fact regarding the Debtors' use of the Project funds.[15] Arguing that piercing the corporate veil is appropriate to hold the Debtors personally liable, Movants say the State Court Motion will resolve the following state law causes of action:

- Contractor theft under Wis. Stat. § 779.02(5),
- Violations of Wisconsin Admin. Code ATCP ("ATCP") §§ 110.027 and 110.07, and
- Conversion.[16]

It was set to be heard by the State Court on July 1, 2026.[17]

All of the causes of action are applicable to Mr. Anderson. Only the contractor theft and conversion apply to Mrs. Anderson.[18]

In addition to $268,282.21 in damages from misappropriation of Project funds,[19] the Movants also assert they are entitled to $15,836.51 in housing rental expenses, $64,705.27 in attorney's fees, and treble damages of the Project funds.[20] The Debtors objected to the State Court Motion.[21] The Movants replied to the objection on the same day.[22]

---

[14] Dkt. No. 33-5.

[15] Dkt. No. 33-5 at 2.

[16] *Id.* at 32-37.

[17] Dkt. No. 33-1 at 1.

[18] *Id.*

[19] This amount comes from the amount the Peterson Parents paid to GHC minus the amount the Debtors allegedly used on the project ($323,367.00 - $55,104.79).

[20] Dkt. No. 33-5 at 38.

[21] Dkt. No. 33-6.

[22] Dkt. No. 33-7.

The Debtors filed a bankruptcy case the day before the State Court Motion was set to be heard. Each of the Movants filed a proof of claim in the amount of $885,388.41.[23] The Movants' attorney has confirmed these four claims are duplicative and that they collectively assert only a single claim of $885,388.41.[24] To date, however, the Movants have failed to amend the claims.

The Movants filed a Motion for Relief from Stay ("Bankruptcy Motion") seeking to continue the litigation in state court.[25] The Debtors objected to the Bankruptcy Motion.[26] The Movants filed a response to the objection.[27]

The Court held a preliminary hearing on September 14, 2026.[28] At the hearing, the Movants indicated their intent to file an action to have their claim exempted from discharge under 11 U.S.C. § 523.[29] No adversary proceeding has been filed as of the date of this decision.

## **Discussion**

This Court has jurisdiction to hear and determine the Bankruptcy Motion under 11 U.S.C. §§ 1134 and 157. The Bankruptcy Motion is a core proceeding. 28 U.S.C. § 157(b)(2)(G). Venue is proper under 28 U.S.C. § 1409(a).

---

[23] Claim Nos. 4-1, 5-1, 6-1, and 7-1. Attorney's fees + Housing Rental Expenses + (3x Misappropriated Funds).

[24] Dkt. No. 47.

[25] Dkt. No. 33.

[26] Dkt. No. 35.

[27] Dkt. No. 36.

[28] Dkt. No. 47.

[29] *Id.*

A. Relief from Stay and the *Sonnax* Factors

Section 362(d)(1) allows for relief from stay "for cause." It states, "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as . . . modifying, or conditioning such stay . . . for cause." 28 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "for cause," but courts have relied on twelve factors, known as the *Sonnax* Factors, to determine whether allowing litigation to proceed outside of bankruptcy court is appropriate. *In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir. 1990). The *Sonnax* factors are the following:

> (1) Whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.* at 1286. "Not all of the factors are relevant in every case, and the Court need not assign equal weight to each factor." *In re 950 Meat & Grocery Corp.*, 617 B.R. 224, 228 (Bankr. S.D.N.Y. 2020). After a movant shows there is cause for relief, the "debtor has the ultimate burden of proof to show that cause does not exist to grant relief from the stay." *Montague Pipeline Techs. Corp. v.*

*Grace/Lansing (In re Montague Pipeline Techs. Corp.)*, 209 B.R. 295, 305 (Bankr. E.D.N.Y. 1997).

Movants argue that there is cause in support of the Bankruptcy Motion because factors 1-3, 7, and 10-12 weigh in their favor; factors 4-6 and 8-9 do not apply.[30] Debtors object, stating that the factors do not support granting the motion, noting that judicial economy would not be served given the possible dischargeability of the debts and the issues unresolved by any decision on the State Court Motion.[31]

Movants seek relief from the automatic stay because they believe the state court is the best forum to decide the State Court Motion. They say the state court is primed to rule on their motion.[32] They argue resolution in state court is relevant to Debtors' bankruptcy because Movants' claim is unliquidated, and the nature of the claim is undetermined. They believe a decision by the state court will establish a basis to declare the claims nondischargeable.

According to Movants, the amount of the claim is relevant because it will determine the pro rata share of distributions to unsecured creditors during the bankruptcy. The nature of the claims is important as it relates to the issue of dischargeability. Movants assert that the resolution of the State Court Motion is dispositive to the issue of dischargeability, and that principles of collateral

---

[30] Dkt. No. 33-1 at 3-4.
[31] Dkt. No. 35 at 1-2.
[32] Dkt. No. 33-1 at 5.

estoppel would bar this Court from relitigating the issues of the State Court Motion.

Based on the views expressed by Movants and Debtors, the most relevant *Sonnax* factors are (1) whether relief would result in a partial or complete resolution of the issues, and (2) the interests of judicial economy and the expeditious and economical resolution of litigation. These two factors are related. If the state court is the best forum to decide the matters raised in the State Court Motion, and if a decision in favor of the Movants would be dispositive on the issues of dischargeability, then granting relief may serve the interests of judicial economy.

The Court finds that it would not be. A decision on the State Court Motion would leave several issues that still require litigation in this Court. Those issues require duplicative presentation and evidence. It would, thus, be in the interests of judicial economy to litigate the issues of the amount of the claim and whether—individually—the claims of theft by contractor, violation of certain state administrative code provisions, and conversion: (1) meet the same elemental requirements of the provisions of 11 U.S.C. § 523, and (2) are equally applicable to Debtors.

1. <u>Elemental Requirements of 11 U.S.C. § 523</u>

If a state court determination of factual questions used the same standard as a bankruptcy court would use in determining whether debt is nondischargeable, collateral estoppel could be applied to promote judicial economy. *Klingman v. Levinson*, 831 F.2d 1292, 1294 (7th Cir.1987). But typically, where collateral estoppel has been invoked to dispose of

nondischargeability actions, the state court matter has already been decided and the necessary factual findings for nondischargeability would qualify for collateral estoppel.

Here, there is no state court decision. Instead, to proceed with an analysis of whether collateral estoppel is applicable, we must assume that the State Court Motion would be decided in the Movants' favor.

With this assumption, the next step is a comparison of the elements of the causes of action in the State Court Motion and the elements of a dischargeability action. *See Beard Research, Inc. v. Kates* (*In re Kates*), 485 B.R. 86, 102 (Bankr. E.D. Pa. 2012). However, this Court cannot determine with precision the applicability of collateral estoppel because the Movants have not filed a dischargeability action. They have suggested that they will rely on section 523(a)(4) to establish dischargeability of the debt, so this analysis will proceed based on this inference.[33]

Section 523(a)(4), in its relevant portion, provides that debts "for fraud or defalcation while acting in a fiduciary capacity" are not dischargeable. 11 U.S.C. § 523(a)(4). "To establish that a debt is non-dischargeable under section 523(a)(4), a creditor must show (1) that the debtor acted as a fiduciary to the creditor at the time the debt was created, and (2) that the debt was caused by fraud or defalcation." *Follett Higher Educ. Grp. v. Berman (In re Berman)*, 629 F.3d 761, 765-66 (7th Cir. 2011). The second element requires intentional conduct that "the fiduciary knows is improper" or reckless conduct where "the

[33] Dkt. No. 46 at 1.

fiduciary consciously disregards . . . a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty." *Bullock v. Bank-Champaign, N.A.*, 569 U.S. 267, 273-74 (2013).

The State Court Motion alleges three causes of action. Only the cause of action regarding theft by contractor is relevant to the first element of a section 523(a)(4) dischargeability action. Wisconsin's theft by contractor statute provides in the relevant part:

> [A]ll moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor, services, materials, plans, and specifications used for the improvements, until all the claims have been paid, and shall not be a trust fund in the hands of any other person. The use of any such moneys by any prime contractor or subcontractor for any other purpose until all claims, except those which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute, have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor or subcontractor of moneys so misappropriated and is punishable under s. 943.20. If the prime contractor or subcontractor is a corporation, limited liability company, or other legal entity other than a sole proprietorship, such misappropriation also shall be deemed theft by any officers, directors, members, partners, or agents responsible for the misappropriation.

Wis. Stat. § 779.02(5).

The Seventh Circuit has held that the fiduciary obligation imposed under this statute is sufficient to establish that a debtor acted as a fiduciary under section 523(a)(4). *See Stoughton Lumber Co. v. Sveum*, 787 F.3d 1174, 1177 (7th Cir. 2015). However, this only establishes the first element of section 523(a)(4). It is not necessary to show that the contractor intended to misappropriate the funds under Wis. Stat. § 779.02(5). *See Burmeister*

*Woodwork Co. v. Friedel*, 65 Wis. 2d 293, 301, 222 N.W.2d 647, 652 (Wis. 1974). Therefore, a finding that the Debtors are liable for civil theft by contractor alone is not dispositive of a section 523(a)(4) discharge action.

Turning to violations of ATCP §§ 110.027 and 110.07, the requisite elements under those statutes require neither a fiduciary capacity nor a specific intent. ATCP § 110.027 requires a seller to "give the buyer timely notice of any impending delay in the home improvement contract performance if performance will be delayed beyond a deadline specified in the home improvement contract." ATCP § 110.027. ATCP § 110.07 affords a buyer several remedies if any of the following conditions are met:

> (a) The seller fails to provide the materials or services by a deadline specified in the home improvement contract.
>
> (b) The seller fails to give buyer notice of an impending delay as required under s. ATCP 110.027 (1), or fails to obtain the buyer's agreement to a new performance deadline.
>
> (c) The buyer believes that the seller has failed to provide the materials or services in a timely manner, and the home improvement contract specifies no deadline for the seller to provide the materials or services.

ATCP § 110.07. A decision on this cause of action is irrelevant to a section 523(a)(4) discharge action.

Conversion does not involve a fiduciary duty but does require intentional control or taking of property belonging to another. *Bruner v. Heritage Cos.*, 225 Wis. 2d 728, 736, 593 N.W.2d 814 (Wis. Ct. App. 1999). A finding of conversion would not completely satisfy the second element of dischargeability under section 523(a)(4) because conversion does not involve knowledge that the conduct is improper or reckless. Without a finding of fact that satisfies the

second element of section 523(a)(4), a decision on the State Court Motion would not be dispositive to the issue of dischargeability.

2. Other Considerations Not Addressed in the State Court Motion

The proofs of claim in this case assume the claim should consist of multiple components: (1) the amounts paid for the Project that were not used in accordance with the work; (2) expenses of the Peterson Family for rent; (3) attorney's fees of some portion of the Petersons; and (4) whatever the damages are under Wis. Stat. § 779.02(5); any additional amount up to three times of the amount awarded needs to be decided under section 895.446(3)(c). Movants assert that the whole claim is nondischargeable. Yet none of the claims identify or distinguish the person who incurred each damage.

Typically, if the primary debt is nondischargeable, all damages traceable to the nondischargeable conduct are nondischargeable as well. *Klingman*, 831 F.2d at 1296. However, the Court would still need to ensure that each of these components arise solely from the prohibited section 523(a) conduct. To do so, the Court needs to distinguish between the legal rights to these damages among the Movants and the liabilities between the Debtors.

The State Court Motion collapses the four Movants into one entity. As a result, a decision on the State Court Motion would not determine who has legal rights to the claim. While the Movants have an oral agreement among themselves, their legal rights differ.

The Peterson Parents owned the property and paid GHC. But they were not a party to the contract. This raises a question regarding rights under the contract and whether the Debtors were fiduciaries to them. On the other hand,

the Peterson Family signed the contract but did not make any payments. It is unclear whether the Peterson Family satisfies the basis for a claim to recover under the theft by contractor statute for sums they did not pay.

Additionally, the State Court Motion collapses the Debtors and various business entities into one enterprise. It fails to distinguish liability among the two Debtors and their various business entities.

According to the allegations in filings in this Court, Mr. Anderson controls and manages GHC, serving as the general contractor. He signed the contract with the Peterson Family. He directed the work on the Project and provided instruction regarding payments.

The Movants attempt to impute a fiduciary capacity onto Mrs. Anderson based on a theory that she was an officer of GHC and that, therefore, piercing the corporate veil is appropriate. However, the record simply shows that she was a registered agent to a different business entity associated with Mr. Anderson. Mrs. Anderson may or may not have benefitted from use of the funds. But that alone does not impute liability as a fiduciary.

So far, the record in this Court fails to establish that she was an officer of GHC or that she acted in a fiduciary capacity. Neither does the State Court Motion present such information based on what has been filed in this Court. A decision on the State Court Motion may determine portions of the issues to be asserted in this Court with respect to Mr. Anderson but would lack the discernment as to Mrs. Anderson.

With these additional considerations, a decision on the State Court Motion would not be satisfactory for the purposes of issues that may be

asserted under the Code. Further, bankruptcy courts regularly apply state laws, including those that are the subject of the State Court Motion. At times that also requires consideration and comparison of the elements under the state law claims to the requirements under the Code. It follows that the interests of judicial economy would be best served in this Court.

## CONCLUSION

For the above reasons, the Motion for Relief from Stay is DENIED.

This decision constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: November 24, 2026

BY THE COURT:

____________________________________
Hon. Catherine J. Furay
U.S. Bankruptcy Judge